**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ALI MUHAMMAD, )<br>)<br>   Plaintiff, )<br>v. )<br>)<br>JPMORGAN CHASE BANK, N.A. )<br>  Serve Registered Agent: )<br>  The Corporation Company )<br>  112 S.W. 7th St., Ste. 3C )<br>  Topeka, KS 66603 )<br>)<br>   Defendant. ) | Case No. _____<br><br><br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

COMES NOW, Plaintiff Ali Muhammad (hereinafter "Plaintiff"), by and through his undersigned attorney, and for his causes of action against Defendant JPMorgan Chase Bank, N.A. d/b/a Chase Bank (hereinafter "Defendant"), alleging and stating as follows:

## PARTIES

1. Plaintiff is an individual residing in the state of Missouri.

2. Defendant is a for-profit national banking association with its headquarters in New York, New York and with bank branches in the state of Kansas.

3. Defendant is one of the oldest financial institutions in the United States, with a history dating back over two-hundred years.

## JURISDICTION AND VENUE

4. This is an action against Defendant to recover damages pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, as amended ("Section 1981").

5. Unlawful acts, omissions, behaviors, events, policies, and practices set forth below were committed in Johnson County, Kansas.

- 1 -

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

7. Plaintiff is African-American.

8. Plaintiff is a member of a class protected by Section 1981.

9. Defendant has unlawfully and intentionally denied and interfered with Plaintiff's right to make and enforce a contract as explained herein.

10. Defendant has refused banking services to other African American patrons because of their race.

11. Defendant intentionally offers its services under different terms dependent on race.

12. Defendant operates a bank branch at 4700 W 119th St, Leawood, Johnson County, Kansas (hereinafter, the "Branch"), and has done so since prior to March 14, 2020.

13. Leawood, Kansas is predominantly white, affluent city.

14. Defendant owns and operates the Branch.

15. The Branch is open to the public.

16. Defendant offers banking services to the public, both at the Branch at elsewhere, including retail financial services such as check cashing, bank accounts, and financial lending services.

17. Defendant offers facilities, services, and accommodations to the public, both at the Branch and elsewhere, including teller windows and automated teller machines.

18. On March 14, 2020, Plaintiff visited the Branch to cash a check he had received which was drawn upon a Chase checking account.

- 3 -

19. Because the check was written on one of Defendant's accounts, Plaintiff decided cash the check with Defendant.

20. Immediately upon entering the Branch, Plaintiff was approached by one of Defendant's employees, who appeared to be tasked with directing patrons to the right place or person within the Branch.

21. Defendant's employee asked Plaintiff what he needed.

22. Plaintiff responded that he needed to cash a check written on a Chase account.

23. Defendant's employee did not direct Plaintiff to the appropriate Branch employee to conduct the transaction.

24. Instead, Defendant's entryway employee reviewed the check Plaintiff was seeking to cash.

25. This was strange, as this entryway employee was clearly tasked with directing patrons to the appropriate bank employee; rather than reviewing the substance of the desired transaction.

26. Defendant required Plaintiff to review the substance of his transaction with the entryway employee because of his race.

27. Defendant does not require white patrons to review the substance of their transactions with the entryway employee.

28. Defendant subjected Plaintiff to different terms of service than white patrons because of his race.

29. Plaintiff was required to provide the check to Defendant's employee and discuss the substance of his desired transaction directly in the entryway of the bank branch.

30. Plaintiff was denied the privacy afforded to white patrons, in conducting his banking transaction.

31. Plaintiff was not permitted to interact with other Branch employees, such as tellers.

32. Defendant permits white patrons of the Branch to interact with other Branch employees, such as tellers.

33. Defendant's employee looked Plaintiff up and down in a negative manner.

34. Plaintiff's skin color was visible to Defendant's employee.

35. Defendant's employee said, in a dismissive tone, "we are not going to cash this."

36. The refusal by Defendant to cash Plaintiff's check was done without any inquiry into whether funds were available, whether cash was on hand, or any other steps which should have been taken as part of the contractual process.

37. Instead, Defendant outright refused to cash the check because of Plaintiff's race.

38. Defendant cashes checks of white patrons.

39. There were numerous additional steps Defendant could have taken to cash the check, or attempt to cash the check, for Plaintiff.

40. Defendant did not take any further steps or actions to cash, or attempt to cash, the check for Plaintiff.

41. Defendant engages in various steps and actions to cash, or attempt to cash, checks for white patrons.

42. For example, Defendant refused to review the account Plaintiff's check was written on to determine if there were available funds.

43. Defendant reviews the accounts which checks are written on for white patrons.

44. Defendant arranges for cash to be made available at the Branch to cash checks for white patrons.

45. Defendant refused to arrange for cash to be made available at the Branch in order to be able to cash the check for Plaintiff because of Plaintiff's race.

46. Instead, Defendant's entryway employee simply stopped Plaintiff from going past the entryway of the Branch, looked at the check, looked at Plaintiff (and therefore saw Plaintiff's race), and refused to cash the check.

47. Plaintiff then asked why Defendant would not cash the check.

48. Defendant's employee responded that the Branch did not have that much money on site.

49. However, Defendant's employee did not check to determine whether appropriate cash was available on sight or could be made available.

50. Upon information and belief, this statement by the employee was untrue, and Defendant had enough money on site to cash the check.

51. Defendant makes arrangements to cash checks for white patrons, but refused to do so for Plaintiff because of his race.

52. Defendant makes funds available on sight for white patrons, but refused to do so for Plaintiff because of his race.

53. Plaintiff then responded that he would then like to open an account with Defendant and deposit the check into the account.

54. Defendant refused to open a checking account for Plaintiff.

55. Defendant opens checking accounts for white patrons, but refused to do so for Plaintiff because of his race.

56. Defendant deposits checks of white patrons into their checking accounts, but refused to do so for Plaintiff because of his race.

57. Defendant's employee told Plaintiff that even if Plaintiff did open an account, the check would not be cashed.

58. Defendant cashes checks of white patrons who have bank accounts with Defendant, but refused to do so for Plaintiff because of his race.

59. Plaintiff was refused the benefits, privileges, terms, and conditions of having a bank account with Defendant because of Plaintiff's race.

60. Defendant's employee then told Plaintiff to cash the check at "*your own* bank."

61. This statement clearly alluded to Plaintiff's race; that Plaintiff's bank was separate from Defendant's Branch due to Plaintiff's race.

62. Plaintiff was deeply embarrassed and humiliated by Defendant's actions.

63. To avoid further embarrassment, and fearing further negative escalation of the situation, Plaintiff left the Branch.

64. Plaintiff was not permitted to cash the check at Defendant's banks.

65. Plaintiff was not permitted to open a bank account with Defendant.

### COUNT I – VIOLATION OF 42 U.S.C. § 1981

66. Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all of the above numbered paragraphs.

67. As described above, Defendant's outrageous conduct constituted discrimination because of Plaintiff's race in violation of Section 1981.

68. Through Defendant's discriminatory conduct, it deprived Plaintiff of his right to make and enforce contracts, and all of the benefits, privileges, terms, and conditions of the contractual relationship, on the same terms as enjoyed by white persons.

69. Defendant intentionally denied Plaintiff the opportunity to cash a check because of his race.

70. Plaintiff's race was the motivating factor as to why Defendant refused to cash Plaintiff's check.

71. Defendant intentionally denied Plaintiff the opportunity to open a bank account because of his race.

72. Plaintiff's race was the motivating factor as to why Defendant refused to open a bank account for Plaintiff.

73. The actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

74. Plaintiff was discriminated against by Defendant in the making of a contract because of his race, African American.

75. As a direct and proximate result of the unlawful conduct of Defendant, as set forth herein, Plaintiff has suffered damages which include mental anguish, personal humiliation, emotional distress, pain and suffering, embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, and other nonpecuniary losses.

76. The conduct of Defendant was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

77.     Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against Defendant, for actual, compensatory and punitive damages, all costs, expenses, and attorneys' fees incurred herein, for appropriate injunctive and equitable relief, for pre and post interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL AND REQUEST FOR PLACE OF TRIAL

Plaintiffs demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all matters set forth in this Complaint or arising therefrom, and, pursuant to D. Kan. Rule 40.2(a), respectfully requests such trial be held in Kansas City, Kansas.

Respectfully submitted,

**EDELMAN, LIESEN & MYERS L.L.P.**

 /s/ *Katherine E. Myers*
Katherine E. Myers,        KS #25833
Alexander Edelman,         KS #25821
208 W. Linwood Blvd.
Kansas City, MO  64111
(816) 533-4976
(816) 463-8449 (Fax)
kmyers@elmlawkc.com
aedelman@elmlawkc.com

**ATTORNEYS FOR PLAINTIFFS**